STATE of Utah, Plaintiff and Appellee,

v.

George B. ARCHAMBEAU, Defendant and Appellant.

No. 900564–CA.

Court of Appeals of Utah.

Oct. 16, 1991.

Joan Watt and Elizabeth Holbrook (argued), Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Annina M. Mitchell (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BILLINGS, Associate P.J., and GARFF and RUSSON, JJ.

BILLINGS, Associate Presiding Judge:

Defendant George B. Archambeau appeals his conviction for possession of a dangerous weapon by a restricted person, a third-degree felony, in violation of Utah Code Ann. §§ 76–10–501(2)(a) and –503(2) (Supp.1988).[1] We affirm.

## FACTS

Defendant was on parole for aggravated robbery, a first-degree felony. In May of 1988, defendant's parole officers confiscated a 10–inch knife with a 5½–inch blade in a sheath bearing the initials "G.A.," a 10–inch bowie knife with a 6–inch blade, a 48–inch blowgun, and blowdarts from defendant's home. The officers considered them dangerous weapons that defendant was prohibited from possessing while on parole. The parole officers released the confiscated items to a third party designated by defendant.

Defendant's parole officers conducted a search of defendant's home on March 28, 1989. During the search, the officers discovered and seized knives, a blowgun, and blowdarts identical to the ones previously confiscated. There was no evidence that defendant had used or intended to use the knives or blowgun in a dangerous manner. Based upon the seized items, the State subsequently filed charges against defendant for possession of a dangerous weapon by a

---

1. The current versions of the statutes under which defendant was convicted, Utah Code Ann. §§ 76–10–501(2)(c) and –503(2) (Supp.1991), contain changes which are not material to the issues we consider in this case.

restricted person. Defendant was convicted of possession of a dangerous weapon by a restricted person, a third-degree felony, in violation of Utah Code Ann. §§ 76–10–501(2)(a) and –503(2) (Supp.1988) and sentenced to a term of not more than five years, to run concurrently with defendant's sentence for aggravated robbery.

On appeal, defendant alleges: (1) Section 76–10–503(2) is an unconstitutional infringement upon the right of Utah citizens to keep and bear arms, as provided in Article I, Section 6 of the Utah Constitution; (2) Section 76–10–503(2), as defined by section 76–10–501(2)(a), is unconstitutionally vague; and (3) there is insufficient evidence to support his conviction.

## PROPRIETY OF CONSIDERING A CONSTITUTIONAL ISSUE FOR THE FIRST TIME ON APPEAL

Defendant contends that Utah Code Ann. § 76–10–503(2) (Supp.1988) is unconstitutional because it infringes upon his right to bear arms. He claims Article I, Section 6 of the Utah Constitution provides the legislature may only limit the use of weapons, not their possession. He, therefore, reasons that because section 76–10–503(2) purports to penalize possession of weapons without regard to their use, it is unconstitutional. As a threshold matter, the State argues this court should not consider the merits of defendant's constitutional challenge as he raises it for the first time on appeal.

■ Generally, a defendant who fails to bring an issue before the trial court is barred from asserting it initially on appeal.[2] Utah's appellate courts have applied this rule to constitutional questions advanced for the first time on appeal.[3]

However, there are two limited but well-established exceptions to this general rule. An appellate court may address a constitutional issue for the first time on appeal if: (1) the trial court committed "plain error;" or (2) there are "exceptional circumstances." See State v. Gibbons, 740 P.2d 1309, 1311 (Utah 1987); State v. Webb, 790 P.2d 65, 78 (Utah App.1990).

The Utah Supreme Court outlined the principles involved in determining whether "plain error" exists in State v. Eldredge, 773 P.2d 29 (Utah), cert. denied, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989):

> The first requirement for a finding of plain error is that the error be "plain," i.e., from our examination of the record, we must be able to say that it should have been obvious to a trial court that it was committing error.... The second and somewhat interrelated requirement for a finding of plain error is that the error affect the substantial rights of the accused, i.e., that the error be harmful.

Eldredge, 773 P.2d at 35.[4]

The second exception to the rule prohibiting consideration of issues for the first

---

**2.** See, e.g., Espinal v. Salt Lake City Bd. of Educ., 797 P.2d 412, 413 (Utah 1990) ("With limited exceptions, the practice of this court has been to decline consideration of issues raised for the first time on appeal."); Progressive Acquisition, Inc. v. Lytle, 806 P.2d 239, 242 (Utah App.1991) ("axiomatic" that claims not before trial court may not be advanced for first time on appeal); Ringwood v. Foreign Auto Works, Inc., 786 P.2d 1350, 1358 (Utah App.) (issues not raised in trial court cannot be considered for the first time on appeal), cert. denied, 795 P.2d 1138 (Utah 1990); Shire Dev. v. Frontier Invs., 799 P.2d 221, 224 (Utah App.1990) ("As we have reiterated many times, we will not consider an issue raised on appeal for the first time.").

**3.** See, e.g., State v. Anderson, 789 P.2d 27, 29 (Utah 1990) (defendant cannot assert, as a basis of error on appeal, an issue he did not raise in trial court "even though defendant's claim involves a constitutional right."); State v. Bobo, 803 P.2d 1268, 1273 (Utah App.1990) ("the proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not, as typically happens ... for the first time on appeal."); State v. Webb, 790 P.2d 65, 77 (Utah App.1990) ("As the Utah appellate courts have reiterated many times, we generally will not consider an issue, even a constitutional one, which the appellant raises on appeal for the first time."); In re M.S., 781 P.2d 1289, 1291 (Utah App.1989) (fundamental principle that matters not raised at trial cannot be raised for the first time on appeal "applies equally to constitutional challenges not presented below, but raised subsequently on appeal").

**4.** See also Anderson, 789 P.2d at 29 (appellate court may consider an issue for the first time on appeal if two criteria are met, "[t]he error must

time on appeal is a catch-all device requiring "exceptional" or "unusual" circumstances. It is a safety device to make certain that manifest injustice does not result from the failure to consider an issue on appeal. Both the Utah Supreme Court and the Court of Appeals have often acknowledged this exception.[5]

Defendant contends there is a third exception to the general rule that constitutional issues will not be considered for the first time on appeal. He argues that a constitutional issue may always be raised for the first time on appeal by any defendant whose "liberty interest" is in jeopardy, citing *State v. Jameson,* 800 P.2d 798, 802–03 (Utah 1990).

The "liberty interest" doctrine is of questionable origin and uncertain development. The doctrine first appeared in an early Utah Supreme Court case, *In re Woodward,* 14 Utah 2d 336, 384 P.2d 110, 111 n. 2 (1963). Woodward was committed to the Utah State Industrial School after committing a delinquent act. Even though matters in juvenile court are civil in nature, a more accurate designation would be quasi-criminal because Woodward was incarcerated for violating the criminal law. On appeal, Woodward attacked the constitutionality of Utah Code Ann. §§ 55–10–1 and –3 (1953), arguing that the sections violated the separation of powers doctrine. In a footnote, the court, by way of dicta, relied on *American Jurisprudence* for the proposition that

> [t]here may be some doubt as to whether we should review the two points on appeal for the first time. If what we say in this opinion would jeopardize the liberty of appellant, which it will not, so far as the two sections are concerned, there would be authority for raising a constitutional issue for the first time on appeal (3 Am.Jur. 63, sec. 293, Const. Law).

*Woodward,* 384 P.2d at 111, n. 2.[6] Although Woodward's liberty was at stake, the court did not articulate a "liberty inter-

be obvious ('plain'), and it must be harmful"); *State v. Verde,* 770 P.2d 116, 121–22 (Utah 1989) ("in most circumstances, the term 'manifest injustice' [found in Utah R.Crim.P. 19(c) ] is synonymous with the 'plain error' standard expressly provided in Utah Rule of Evidence 103(d) and elaborated upon in *Eldredge* ..."). The Utah Court of Appeals applied *Eldredge*'s two-step analysis of plain error in *State v. Tucker,* 800 P.2d 819, 821 n. 1 (Utah App.1990) ("[f]irst, the error must be plain, which means we must be able to determine from the record that 'it should have been obvious to a trial court that it was committing error.' ... Second, the error must be harmful.") (citations omitted).

5. *See, e.g., Jolivet v. Cook,* 784 P.2d 1148, 1151 (Utah 1989) ("We have held that in the absence of exceptional circumstances, this Court will not entertain a claim raised for the first time on appeal."), *cert. denied,* 493 U.S. 1033, 110 S.Ct. 751, 107 L.Ed.2d 767 (1990); *State v. Gibbons,* 740 P.2d 1309, 1311 (Utah 1987) ("ordinarily, this Court will not entertain an issue first raised on appeal in the absence of exceptional circumstances or plain error"; court determined incomplete trial procedures and a change of defense counsel during appeal were unusual circumstances); *Lopez v. Shulsen,* 716 P.2d 787, 789 (Utah 1986) ("Familiar rules of appellate review preclude an issue being raised for the first time on appeal except under exceptional circumstances."); *State v. Steggell,* 660 P.2d 252, 254 (Utah 1983) ("In the absence of exceptional

circumstances, this Court has long refused to review matters raised for the first time on appeal where no timely and proper objection was made in the trial court."); *State v. Pierce,* 655 P.2d 676, 677 (Utah 1982) (per curiam) (court can entertain an exception *sua sponte* if facts reveal "great and manifest injustice" would otherwise occur or under exceptions court believes are of "momentous concern in protecting constitutional rights previously waived"); *State v. Lee,* 633 P.2d 48, 53 (Utah) ("in the absence of special circumstances, an appellate court will not rule on grounds not addressed in the trial court"), *cert. denied,* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); *Webb,* 790 P.2d at 78 (exception to general rule consists of cases where there are "exceptional circumstances" which excuse the failure to raise the issue below).

6. In fact, the original provision in the first edition of *American Jurisprudence,* upon which the *Woodward* court relied for the creation of its new exception, reads, in pertinent part:

> The general rule that an appellate court will not consider grounds of defense not asserted in the lower court is applicable, ordinarily, to defenses and objections based on constitutional grounds. Thus, the ordinance, or administrative order, cannot ordinarily be raised for the first time on appeal. An exception to this rule has been made, however, in cases involving the deprivation of life or liberty.

3 Am.Jur. *Appeal and Error* § 293 (1936).

est" as a justification for considering matters for the first time on appeal.[7]

Almost twenty years later, the court resurrected this doctrine in a civil appeal by Riverton police officers seeking to enjoin Salt Lake County from providing police services to Riverton. *See Pratt v. City Council of City of Riverton*, 639 P.2d 172 (Utah 1981). The court opined: "Issues not raised at trial cannot be raised on appeal. This general rule applies equally to constitutional issues, with the limited exception of where a person's liberty is at stake." *Id.* at 173–74.

Neither *Woodward* nor *Pratt* illuminates the meaning of "liberty interest" or provides guidance for its application.

The Utah Supreme Court first mentioned the "liberty interest" exception in a criminal case in *State v. Breckenridge*, 688 P.2d 440 (Utah 1983), an appeal to set aside a guilty plea to a charge of arson. Factually, however, *Breckenridge* is a case in which the "exceptional circumstances" exception would have allowed appellate review.[8] Nevertheless, relying upon *Pratt*, the court stated, "[t]he general rule that constitutional issues not raised at trial cannot be raised on appeal is excepted to when a person's liberty is at stake.... Here Breckenridge's felony conviction and sentence rest on the outcome of his appeal." *Id.* at 443.

After *Breckenridge*, the Utah Supreme Court ignored the "liberty interest" exception in four subsequent criminal cases, choosing instead to apply the traditional "plain error" or "exceptional circumstances" standards. *See Gibbons*, 740 P.2d at 1311 (Utah 1987) ("ordinarily, this Court will not entertain an issue first raised on appeal in the absence of exceptional circumstances or plain error"); *Eldredge*, 773 P.2d at 35 (Utah) (emphasizing and discussing elements of "plain error"); *Jolivet v. Cook*, 784 P.2d 1148, 1151 (Utah 1989) ("We have held that in the absence of exceptional circumstances, this Court will not entertain a claim raised for the first time on appeal), *cert. denied*, 493 U.S. 1033, 110 S.Ct. 751, 107 L.Ed.2d 767 (1990); and *State v. Anderson*, 789 P.2d 27, 29 (Utah 1990) ("The error must be obvious ('plain'), and it must be harmful.").

However, in October, 1990, the Utah Supreme Court ambiguously alluded to the "liberty interest" exception in *State v. Jameson*, 800 P.2d 798 (Utah 1990), an appeal from a probation revocation.[9] The

7. The court ultimately ruled that the two sections in question were unconstitutional because they: (1) granted general supervision and control over the juvenile court to the welfare commission; and (2) sanctioned removal of judges by an administrative agency of the executive branch.

8. Breckenridge was an employee of a body shop who attempted to dispose of some old vehicle parts by igniting them. Although Breckenridge tried to extinguish the ensuing fire, it caused extensive damage to his employer's building. Even though the record indicated that the fire was *accidental*, Breckenridge was charged with and pled guilty to arson, the *intentional* damage to a structure by fire.

Subsequently, Breckenridge moved to withdraw his guilty plea, and he reached a stipulation to that effect with the Assistant Salt Lake County Attorney. He claimed that his guilty plea resulted from threats, coercion, and lies by the prosecutor. The lower court denied Breckenridge's motion, sentencing him to prison and imposing a fine and restitution.

On appeal, and at the suggestion of the supreme court, Breckenridge raised, for the first time, the issue that he did not receive due process since the lower court accepted his guilty plea without a sufficient factual basis and without ensuring that Breckenridge understood the elements of arson. Although Breckenridge failed to assert his due process argument until he came before the supreme court, the events leading to his arson conviction for accidentally starting a fire certainly qualify as "exceptional circumstances" under which the supreme court could have entertained a constitutional claim advanced for the first time on appeal.

9. In *Jameson*, the defendant pled guilty to one count of aggravated sexual abuse of a child and was placed on probation for three years. One special condition of his probation required that he successfully complete an incest offender program. Because the defendant failed to meet this condition, he was removed from treatment, his probation was revoked, and he was committed to the Utah State Prison.

Some time after the probation revocation hearing, the State acknowledged that, because of errors in the procedure of that hearing, the defendant had been denied due process. The defendant was then granted another opportuni-

defendant raised several issues for the first time on appeal. In ascertaining which of the defendant's claims were appropriate for appellate review, the court was inconsistent in articulating the standard for when the court would consider an issue for the first time on appeal. The court began by stating that "[t]he general rule is that, outside exceptional circumstances, an appellate court will not hear issues raised for the first time on appeal. This rule applies to constitutional issues unless a person's liberty is at stake." *Jameson*, 800 P.2d at 801. Next, in response to the defendant's argument that the procedural errors in his first revocation hearing qualified as unusual circumstances, the court acknowledged the traditional "exceptional circumstances" exception, stating that "it is true that in some circumstances serious procedural defects may constitute exceptional circumstances that will allow a criminal defendant to raise issues for the first time on appeal." *Id.* at 802. Finally, and even on the same page as the "exceptional circumstances" rule, the court noted that even though the defendant's claim of double jeopardy was never brought before the trial judge, "we are obliged to consider this argument because it is based on a constitutional question and defendant's liberty is at stake." *Id.* at 802–03. Defendant contends this statement resurrects *Breckenridge*'s proposition that any threat to a defendant's "liberty interest" *alone* is suf-

ficient to require an appellate court to consider a constitutional issue advanced for the first time on appeal. We disagree.

■ We read *Jameson* differently. We conclude that a defendant may not assert a constitutional issue for the first time on appeal unless he can demonstrate "plain error" *or* "exceptional circumstances." The fact that a "liberty interest" is at stake is merely one factor articulated by the court to be considered when determining whether "exceptional circumstances" exist.

Our interpretation is grounded in the ambiguous directive of *Jameson*, the mottled history of the "liberty interest" exception, and the practical difficulty with recognizing a *per se* "liberty interest" exception in criminal cases. A "liberty interest" exception may be useful in civil appeals, like *Pratt*, as a means of isolating "unusual circumstance" civil cases in which an appellate court should consider a constitutional issue initially on appeal. In a criminal case, however, it is almost always true that the defendant's "conviction and sentence rest on the outcome of his [or her] appeal," *Breckenridge*, 688 P.2d at 443, and, therefore, his or her "liberty" is at stake. A *per se* "liberty interest" exception to the rule prohibiting the consideration of issues for the first time on appeal would effectively swallow the general rule in criminal appeals.[10]

ty for a hearing addressing the revocation of his probation. During this second hearing, the defendant admitted that he had refused to participate in certain aspects of his therapy. At the conclusion of this hearing, the judge determined that the defendant had violated the conditions of his parole and incarcerated him for the remainder of his original sentence.

10. The Utah Court of Appeals has struggled with the meaning of the "liberty interest" exception, choosing to simply ignore it in most cases. *See, e.g., Bobo*, 803 P.2d at 1273 (Utah App.1990) (court does not mention *Jameson*, choosing instead to focus on the trial court: "the proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not, as typically happens ... for the first time on appeal); *State v. Curry*, 814 P.2d 1150 (Utah App.1991) (court does not mention *Jameson* and retreats to the "exceptional circumstances" exception); *Roosevelt City Corp. v. Nebeker*, 815 P.2d 738, 739 n. 2 (Utah App.1991) (court does not men-

tion *Jameson*, citing *Webb* for the proposition that an issue not raised in the trial court is not preserved for appeal).

Judge Bench of the Court of Appeals, sitting by designation in *Espinal v. Salt Lake City Bd. of Educ.*, 797 P.2d 412 (Utah 1990), proposed in his concurrence a two-prong requirement:

The general rule is, of course, that issues raised for the first time on appeal are not properly brought and will not be considered.... This general rule applies even to constitutional issues, except where (1) a person's liberty is at stake, ... and (2) exceptional circumstances are present.

*Id.* at 415–16 (citations omitted).

In *State v. Harrison*, 805 P.2d 769 (Utah App.), *cert. denied*, 817 P.2d 327 (Utah 1991), Judge Greenwood accepted the Utah Supreme Court's treatment of "plain error," "exceptional circumstances," and "liberty interest" as alternative exceptions to the general rule. She noted that an objection to the gender basis of a peremptory

We conclude that the "plain error" and "exceptional circumstances" exceptions are sufficiently broad to encompass any situation requiring Utah's appellate courts to consider a constitutional issue for the first time on appeal in the interest of justice. Based on the analysis set forth above, we decline to consider the substance of defendant's constitutional argument unless he can demonstrate: (1) "exceptional circumstances," or (2) "plain error."

■ While defendant's "liberty interest" is at stake, we find no "exceptional circumstances." Although the "exceptional circumstances" exception is broad and remains somewhat undefined, our reading of prior cases and the examples therein reveals that there are no extenuating or unusual circumstances in the instant case. *See, e.g.*, our discussion of *Breckenridge* set forth above.

■ Secondly, we find no "plain error" on the part of the trial court. For the "plain error" exception to apply, the lower court must have committed an error which is both obvious and harmful. Defendant asserts that the trial court obviously erred by failing to recognize the unconstitutionality of Utah Code Ann. § 76–10–503(2) (Supp.1988) in view of the plain language of Article I, Section 6. We disagree. An amendment to the state constitution [11] does not obviously invalidate prior Utah authority approving Utah Code Ann. § 76–10–

503(2),[12] particularly when there is no supportive legislative history. *See* House Debate on Senate Joint Resolution No. 2; House Debate on Senate Joint Resolution No. 3.

In sum, we decline to reach the merits of defendant's constitutional challenge that Utah Code Ann. § 76–10–503(2) (Supp.1988) violates Article I, Section 6 of the Utah Constitution.

## UTAH CODE ANN. § 76–10–503(2) IS NOT UNCONSTITUTIONALLY VAGUE

Defendant was convicted under Utah Code Ann. § 76–10–503(2) (Supp.1988) which provides, in pertinent part:

(a) Any person who is on parole for a felony or is incarcerated at the Utah state prison or other like facility may not have in his possession or under his custody or control any *dangerous weapon* as defined in this part.

(b) Any person who violates this section is guilty of a third degree felony, and if the dangerous weapon is a firearm, explosive, or infernal machine he is guilty of a second degree felony.

(emphasis added). Utah Code Ann. § 76–10–501(2)(a) (Supp.1988) defines dangerous weapons as follows:

"Dangerous weapon" means any item that in the manner of its use or intended

challenge could be raised on appeal for the first time if it involved any of these exceptions. She expressed concern, however, at the prospect of having to treat a threat against liberty as a distinct exception:

> We believe that "the interest of predictability, accountability, and fairness" would be served by a more careful examination of when Utah's appellate courts will consider issues not raised in the trial courts.... We further believe that the previously enunciated standards allowing first-time appellate review of issues are sufficiently liberal to provide appropriate redress, and are therefore troubled by a standard *requiring* review whenever a "liberty" interest is identified.

*Harrison*, 805 P.2d at 779 (citation omitted).

11. Article I, Section 6 of the Utah Constitution was revised in 1985 and currently reads as follows:

> The individual right of the people to keep and bear arms for security and defense of self,

family, others, property, or the state, as well as for other lawful purposes shall not be infringed; but nothing herein shall prevent the legislature from defining the lawful use of arms.

Defendant contends that the above version provides broader protection to the right to bear arms than did the previous version, which read:

> The people have the right to bear arms for their security and defense, but the Legislature may regulate the exercise of this right by law.

12. *See State v. Vlacil*, 645 P.2d 677, 680 (Utah 1982); *State v. Beorchia*, 530 P.2d 813, 814–15 (Utah 1974). Section 76–10–503 was challenged in both cases by aliens convicted of possession of a dangerous weapon. The court held that the legislature had sufficient authority to enact the version of section 76–10–503 then in effect, and the statute was a valid exercise of the state's police power.

use is capable of causing death or serious bodily injury. In construing whether an item, object, or thing not commonly known as a dangerous weapon is a dangerous weapon, the character of the instrument, object, or thing; the character of the wound produced, if any; and the manner in which the instrument, object, or thing was used are determinative.

■ Defendant contends the statutory definition of "dangerous weapon" is unconstitutionally vague as it does not give notice of prohibited behavior with sufficient specificity, as required by Article I, Section 7 of the Utah Constitution and the fourteenth amendment to the United States Constitution.[13] Defendant also claims the malleable nature of the definitional statute renders it an unconstitutional delegation of legislative power [14] to the courts, pursuant to Article V, Section 1 of the Utah Constitution.

The State counters that Utah Code Ann. § 76–10–501(2)(a) (Supp.1988) sets forth a sufficiently definite standard for distinguishing those items that are dangerous weapons from those that are not. The State contends that, rather than engage in a futile effort to enact an exhaustive list of "dangerous weapons," the legislature has created descriptive categories by which one may determine whether a given item is a "dangerous weapon." The State claims the statute states that an item will be considered a dangerous weapon if, based upon its actual use, subjectively intended use, or objectively understood use, it can cause death or serious bodily injury. The State argues that defendant's knives and blowgun fall within the category of items which are dangerous weapons because of their objectively understood use. We agree.

■ Generally, we review a legislative enactment with the presumption that it is constitutional. *See Greenwood v. City of North Salt Lake*, 817 P.2d 816, 819 (Utah 1991); *see also Provo City Corp. v. State*, 795 P.2d 1120, 1125 (Utah 1990) ("We have a duty to construe statutes to avoid constitutional conflicts.").

The Utah Supreme Court recently set forth a vagueness analysis in *Greenwood*, considering an ordinance imposing special requirements upon the owners of vicious dogs.

The void-for-vagueness doctrine requires that a statute or ordinance define an "offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 [103 S.Ct. 1855, 1858, 75 L.Ed.2d 903] (1983). More important than actual notice is " 'the requirement that a legislature establish minimal guidelines to govern law enforcement.' " 461 U.S. at 358 [103 S.Ct. at 1858] (quoting *Smith v. Goguen*, 415 U.S. 566, 574 [94 S.Ct. 1242, 1248, 39 L.Ed.2d 605] (1974)). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 [92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

---

13. Because defendant provides no independent state constitutional analysis, we decline to reach his challenge to the state constitution. *See, e.g., State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988) ("As a general rule, we will not engage in state constitutional analysis unless an argument for different analyses under the state and federal constitutions is briefed."); *Bobo*, 803 P.2d at 1272 (Utah App.1990) ("Until such time as attorneys heed the call of the appellate courts of this state to more fully brief and argue the applicability of the state constitution ... we cannot meaningfully play our part in the judicial laboratory of autonomous state constitutional law development.") (citations omitted).

14. In support of his argument that the statute's vague definition of "dangerous weapons" permits persons and entities other than the legislature to define the parameters of the crime of possessing a dangerous weapon, thus creating an unconstitutional delegation of legislative authority, defendant cites *State v. Gallion*, 572 P.2d 683 (Utah 1977) and *State v. Green*, 793 P.2d 912 (Utah App.1990). Both cases involved the Utah Controlled Substances Act, holding that it unconstitutionally granted the attorney general power to change the list of substances for which a person could be prosecuted. We find these cases inapposite.

*Greenwood,* 817 P.2d at 819.[15]

A constitutional vagueness challenge can proceed either as a facial challenge or in its application, based upon the facts of the case. *See id.* Defendant has not specified the basis of his challenge. We assume defendant intends to challenge the constitutionality of § 76–10–503(2), as defined by § 76–10–501(2)(a), both facially and in application.

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.

*Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 *reh'g denied,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982). *See State v. Murphy,* 674 P.2d 1220, 1222 (Utah 1983).

Section 76–10–501(2)(a) does not implicate fundamental first amendment rights. *See United States v. Mazurie,* 419 U.S. 544, 551, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).[16] Further, defendant does not argue that § 76–10–501(2)(a) is void in all its applications. We, therefore, only consider the constitutionality of § 76–10–501(2)(a) as applied to defendant under the facts of this case.

To understand Utah Code Ann. § 76–10–501(2)(a) (Supp.1988), it is necessary to break the statute into its component parts. The first sentence states: " 'Dangerous weapon' means *any* item that in the manner of its use or intended use *is capable* of causing death or serious bodily

---

**15.** The United States Supreme Court articulated the policy behind the vagueness doctrine in *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.... Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked."

**16.** The "constitutionally protected conduct" referenced in the Court's analysis in *Village of Hoffman Estates* is limited to the scope of the first amendment. *See, e.g., Schall v. Martin,* 467 U.S. 253, 268 n. 18, 104 S.Ct. 2403, 2412 n. 18, 81

L.Ed.2d 207 (1984) ("outside the limited First Amendment context, a criminal statute may not be attacked as overbroad"); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 168, 92 S.Ct. 1965, 1969, 32 L.Ed.2d 627 (1972) ("While the doctrine of 'overbreadth' has been held by this Court in prior decisions to accord standing by reason of the 'chilling effect' that a particular law might have upon the exercise of the First Amendment rights, that doctrine has not been applied to constitutional litigation in areas other than those relating to the First Amendment."); J. Nowak & R. Rotunda, *Constitutional Law* § 16.8, at 944 (1991) ("An overbroad statute—a statute that is written too broadly—is one that is designed to burden or punish activities that are not constitutionally protected, but the statute also includes within its scope activities protected by the first amendment."); L. Tribe, *American Constitutional Law* § 12–27, at 1023 (1988) ("an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court ..."); Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844, 860 (1970) ("The second guideline for overbreadth scrutiny is that the area affected by a challenged law must substantially involve first amendment interests. That is, the primary conduct which is affected by the law at issue must to a substantial extent be the kind of expressive and associational behavior which at least has a colorable claim to the protection of the amendment.").

harm" (emphasis added). Read alone, this statement suggests that any item capable of creating harm is a dangerous weapon, including a hunting rifle, a butcher knife, or a knitting needle.

However, this statement does not appear in isolation but is limited by the second sentence, which states: "In construing whether an item, object, or thing *not commonly known as a dangerous weapon* is a dangerous weapon, the character of the instrument, object, or thing; the character of the wound produced, if any; and the manner in which the instrument, object, or thing was used are determinative" (emphasis added). Implicit in this second sentence are two separate categories: (1) items *commonly known* as dangerous weapons; and (2) items *not commonly known* as dangerous weapons but included if, in considering the three enunciated characteristics, they qualify.

The State does not contend that the second category is at issue in this case. There is no evidence that the knives and blowgun were used or were intended to be used in a dangerous manner. Rather, our decision must rest on whether defendant should have been reasonably aware that his hunting knives and blowgun were objectively dangerous weapons. We conclude that defendant's two 10–inch knives with 5–6–inch blades and his 48–inch blowgun are commonly known as dangerous weapons.[17] Furthermore, defendant was specifically put on notice by his parole officers that they considered these items dangerous weapons and that he was prohibited by law from possessing them while on parole. Defendant was, thus, on notice that he was unlawfully in possession of dangerous weapons. Section 76–10–503(2), as defined by section 76–10–501(2)(a), is not unconstitutionally vague as applied to defendant.

Although § 76–10–501(2)(a) is not marked by "meticulous specificity," it is sufficient that it has "flexibility and reasonable breadth" in dealing with which items are characterized as dangerous weapons. *Grayned*, 408 U.S. at 110, 92 S.Ct. at 2300.[18] It provided defendant with notice that he could not possess items commonly known as dangerous weapons, such as knives and blowguns, while on parole.

### INSUFFICIENCY OF EVIDENCE

■ Defendant's final contention is that there is insufficient evidence to prove that the items seized from his home are dangerous weapons.

In *State v. Webb*, 790 P.2d 65 (Utah App.1990), this court discussed the proper standard under which to evaluate a claim for insufficient evidence. Accordingly, "so long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made, our inquiry stops." *Id.* at 84 (citation omitted).

The trial judge not only had the opportunity to view the items in question personally but had the benefit of having an expert demonstrate the use of the blowgun by shooting it in the courtroom. Additionally, the expert testified about the damage a blowgun dart may cause to a human. We agree with the State that there was ample evidence to prove that defendant's knives and blowgun are objectively the type of instruments reasonable people would assume were dangerous weapons, as they

---

17. *See, e.g., State v. Clevidence*, 153 Ariz. 295, 736 P.2d 379, 385 (Ariz.Ct.App.1987) (knife is a deadly weapon); *State v. Davis*, 711 P.2d 232, 234 (Utah 1985) ("no question" that defendant's unloaded handgun is a "dangerous weapon"); *State v. Nielsen*, 544 P.2d 489, 490 (Utah 1975) (pistol is a dangerous weapon).

18. *See also State v. Graham*, 366 N.W.2d 335, 337 (Minn.Ct.App.1985) ("It would be impossible to specify any and all objects capable of producing death or great bodily harm when used to inflict injury on another. Thus, by necessity, the definition of dangerous weapon

... must be expressed in flexible terms and be broad and inclusive."); *In re Boyer*, 636 P.2d 1085, 1088 (Utah 1981) (" 'the Constitution does not require impossible standards'; all that is required is that the language convey 'sufficiently definite' standards"); *State v. Pilcher*, 636 P.2d 470, 471 (Utah 1981) ("[t]he statute need only be as definite and certain as the subject matter permits."); *State v. Harrison*, 601 P.2d 922, 923 (Utah 1979) ("[a] statute may legitimately proscribe a broad spectrum of conduct with a very few words, so long as the outer perimeters of such conduct are clearly defined.").

were objectively the type of weapons which are capable of causing death or serious bodily injury. Furthermore, according to the trial testimony of parole agents present during the May, 1988 search of defendant's home, defendant was told that his knives and blowgun were being seized at that time because the agents considered them restricted, dangerous weapons defendant was forbidden from possessing while on parole.[19]

## CONCLUSION

In sum, we uphold defendant's conviction for possession of a dangerous weapon by a restricted person. We decline to reach defendant's constitutional claim under Article I, Section 6, because defendant did not present this question to the trial court and has failed to demonstrate either "plain error" or "exceptional circumstances." Furthermore, we hold that Utah Code Ann. § 76–10–501(2)(a) (1990) is not unconstitutionally vague as applied to defendant but provided defendant adequate notice that his knives and blowgun were "dangerous weapons." Finally, there is ample evidence that defendant's knives and blowgun are, objectively, dangerous weapons under section 76–10–501(2)(a).

GARFF and RUSSON, JJ., concur.

---

**19.** During sentencing proceedings, the court stated:

> The evidence was that the blowgun and knives were confiscated as dangerous weapons upon the first occasion, and that was the explanation of the probation officer. And when they were returned, they were returned with the understanding that Mr. Archambeau would have them released to a cousin, not himself. And so, the fact they found themselves back in his possession seems to the Court is done at his own risk. He knew why they were taken and removed from him in the first instance.