STATE of Utah, Plaintiff and Appellee,

v.

Randall PUGMIRE, Defendant and Appellant.

No. 940610–CA.

Court of Appeals of Utah.

June 22, 1995.

Michael J. Petro, Young & Kester, Spring-ville, for appellant.

Joanne C. Slotnik, Asst. Atty. Gen., Jan Graham, State Atty. Gen., Salt Lake City, for appellee.

Before DAVIS, BENCH and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Randall Pugmire challenges his conviction for possession of a dangerous weapon by a restricted person under section 76–10–503(2) of the Utah Code.[1] We affirm.

## BACKGROUND

On February 8, 1994, Pugmire appeared at his ex-wife's home in Provo, Utah. Because she had a protective order against him, she called the police. Meanwhile, Pugmire scuffled with her boyfriend inside her home. When the police arrived, they arrested Pug-mire for a variety of violations and searched him. During the search, police found a knife in Pugmire's pocket, confiscated it, and charged him with possession of a dangerous weapon by a restricted person under section 76–10–503(2) of the Utah Code.

After a bench trial, Pugmire was convicted of the dangerous weapon charge. He appeals that conviction, arguing that section 76–10–503(2), as defined by section 76–10–501(2) of the Utah Code,[2] is unconstitutionally vague as applied to the facts of this case;[3] and there was insufficient evidence to support his conviction.

## ANALYSIS

### I. Statutory Vagueness

Pugmire argues that the statutory definition of "dangerous weapon" from section 76–10–501(2), as incorporated by section 76–10–503(2), did not sufficiently specify the behavior from which he was forbidden, as required by constitutional due process. Specifically, he asserts he could not have known that the "oversized pocket knife" or "buck knife" he was carrying was a dangerous weapon within the statute.

Although Pugmire raises the issue on appeal, he did not challenge the constitutionality of this statutory scheme before the trial court.[4] As a general rule, we will not consider issues—including constitutional issues—initially raised on appeal. *State v. Ar-*

---

1. Section 76–10–503(2) reads in part: "(a) Any person who is on parole or probation for a felony may not have in his possession or under his custody or control any dangerous weapon as defined in this part. (b) Any person who violates this subsection is guilty of a third degree felony...." Utah Code Ann. § 76–10–503(2) (1995).

2. Section 76–10–501(2)(a) reads:
   "Dangerous weapon" means any item that in the manner of its use or intended use is capable of causing death or serious bodily injury. The following factors shall be used in determining whether an item, object, or thing not commonly known as a dangerous weapon is a dangerous weapon:
   (i) the character of the instrument, object, or thing;
   (ii) the character of the wound produced, if any; and
   (iii) the manner in which the instrument, object, or thing was used.
   Utah Code Ann. § 76–10–501(2)(a) (Supp.1988) (currently codified at § 76–10–501(2)(c) (1995)).

3. Pugmire does not challenge the facial constitutionality of the statutory scheme at issue. In *State v. Archambeau*, 820 P.2d 920 (Utah App. 1991), this court held the statutory scheme to be valid, both facially and as applied, against a claim the statutory language was unconstitutionally vague. *Id.* at 928–29.

4. In his brief under "Issues Presented for Review," Pugmire asserts "[t]he issue of vagueness was preserved at the trial court set forth in the Defendant's trial memorandum." However, nowhere in his memorandum does Pugmire argue the involved statutes are unconstitutionally vague. Instead, his argument focuses on "whether an oversized knife is within the intent of the statute." He examines cases from other states interpreting similar statutes and finding knives of various sizes are not within those statutes. Then, he analyzes the language of the Utah statute and the way in which it has been interpreted in some cases involving firearms to show the statute does not intend to include "oversized knives."

*chambeau,* 820 P.2d 920, 922 (Utah App. 1991). However, if an appellant demonstrates "(1) the trial court committed 'plain error'; or (2) there are 'exceptional circumstances,'" we will address newly raised constitutional issues. *Id.* Here, Pugmire did not even argue—let alone demonstrate—plain error or exceptional circumstances; accordingly, the constitutional issue is not properly before this court and we will not consider it further. *See City of Orem v. Lee,* 846 P.2d 450, 452 (Utah App.), *cert. denied,* 857 P.2d 948 (Utah 1993).

## II. Sufficiency of Evidence

Pugmire argues the evidence was insufficient to support the trial court's finding that the knife he carried was a dangerous weapon. The knife itself was the only evidence presented at trial on this issue.

Although we are dissatisfied with the controlling analysis found in *State v. Archambeau,* 820 P.2d 920, 928–30 (Utah App.1991), we are constrained to follow it. *See State v. Thurman,* 846 P.2d 1256, 1269 (Utah 1993) (holding stare decisis applies when one court of appeals panel is faced with previous decision of different panel).

In *Archambeau,* the only evidence the trial court had on which to base its finding that two 10–inch knives including 5– to 6–inch blades were dangerous weapons was to view them personally. *Archambeau,* 820 P.2d at 929. There, this court first interpreted the statutory scheme at issue to require an initial determination of whether a certain weapon or object was "commonly known" as a dangerous weapon or "not commonly known" as a dangerous weapon. *Id.* Then, the court summarily determined that "defendant's two 10–inch knives with 5–6–inch blades ... are commonly known as dangerous weapons." *Id.* The court explained, "[D]efendant's knives ... are objectively the type of instruments reasonable people would assume were dangerous weapons, as they were objectively the type of weapons which are capable of causing death or serious bodily injury." *Id.* at 929–30. Based on this analysis, the court concluded "there was ample evidence" to support the trial court's finding that Archambeau's knives were dangerous weapons within the statute.[5] *Id.* at 930.

■ Here, the trial court personally viewed Pugmire's knife, which was about

At oral argument, Pugmire's counsel conceded this issue was not explicitly discussed in the trial memorandum or in the trial court's findings of fact and conclusions of law, but asserted the issue was "implicitly" raised and considered. Generally, an issue must be *expressly* preserved below to warrant appellate consideration. *State v. Brown,* 856 P.2d 358, 360 (Utah App.1993) (stating "to ensure trial court's opportunity to consider an issue, appellate review of criminal cases in Utah requires 'that a contemporaneous objection or some form of specific preservation of claims of error must be made a part of the trial court record'" (quoting *State v. Tillman,* 750 P.2d 546, 551 (Utah 1987))). Thus, counsel's argument is without merit.

5. We believe the applicable statutory interpretation in *Archambeau,* to be flawed in a number of ways. First, the court there concludes that the definition of a dangerous weapon found in § 76–10–501(2)(a), *see supra* note 2, suggests any object capable of causing physical harm is a dangerous weapon. *Archambeau,* 820 P.2d at 928–29. Instead, we read the definition to include those objects whose uses (objective) or intended uses (subjective) are capable of causing death or serious bodily injury. We also note that a more workable judicial interpretation of this statute would identify *whose* use and intent should be analyzed—most obviously the defendant's. Use

and intent require an actor. The object itself cannot define its use or intended use.

Second, as opposed to *Archambeau's* reading, *id.* at 929, we read the second sentence of § 76–10–501(2)(a) to be consistent with and not to limit the first sentence—i.e., the factors listed in the second sentence could be applied in either a subjective or objective analysis.

Third, nothing in the definition even remotely suggests that objects "commonly known" as dangerous weapons are automatically dangerous weapons within the statute. *See Archambeau,* 820 P.2d at 928–29. Whether an object is or is not commonly known as a dangerous weapon should be simply another factor in the "use or intended use" analysis. Thus, *Archambeau* would actually support Pugmire's failed vagueness argument because the statute does not purport to outline a category of objects "commonly known" as dangerous weapons. *See supra* note 2; *Archambeau,* 820 P.2d at 929.

On a case-by-case basis, the *Archambeau* analysis tends to leave the determination of whether an object is a commonly known dangerous weapon to a particular judge's or jury's life experiences. *See Archambeau,* 820 P.2d at 929 (concluding summarily "that defendant's two 10–inch knives with 5–6–inch blades ... are commonly known as dangerous weapons"). For example, in this case, the trial court viewed Pugmire's knife, then used the following language in its

nine and one-half inches long including a four and one-half inch blade. The size of the knife is not significantly different from those knives deemed dangerous weapons in *Archambeau*. Hence, we must determine under *Archambeau* that Pugmire's knife is "commonly known" as a dangerous weapon and that it is objectively the kind of instrument reasonable people would assume to be a dangerous weapon. *See id.* at 929. Based on this "ample evidence," *id.* at 930, we must affirm the trial court's finding that Pugmire's knife was a dangerous weapon within the statute.

## CONCLUSION

We will not consider Pugmire's argument raised for the first time on appeal that the statutory scheme at issue is unconstitutionally vague as applied. We conclude under *State v. Archambeau*, 820 P.2d 920, 929–30 (Utah App.1991), that there was sufficient evidence to support the trial court's finding that Pugmire's knife was a dangerous weapon. Accordingly, we affirm.

DAVIS, Associate P.J., concurs.

BENCH, J., concurs in result.

findings of facts and conclusions of law: (1) "A personal examination of the knife found on the defendant at the time of his arrest has been made by the court"; (2) "[t]he knife itself, *in this court's view,* is not what one would consider an ordinary pocket knife"; and (3) *"[t]his court is of the opinion* that this is the type of knife ordinarily used by game hunters." (Emphasis added). These seem to us to be arbitrary and subjective findings—a result required not by the statutory language, but by the interpretation of that language imposed by *Archambeau*. How shall a judge or jury divine what is "commonly known" without some outside evidence?

Finally, *Archambeau* arguably subscribes to a notice theory, emphasizing the defendant's probation officer had warned him not to possess the specific weapons in question. *See id.* at 929–30. The statutory scheme does not require felons to be notified of specific weapons they cannot possess and we do not believe case law should even appear to attach that requirement.