Justice LEE,
dissenting:
T30 The operative statutory provisions criminalize a restricted person's "possession" of "an item that in the manner of its use or intended use is capable of causing death or serious bodily injury." Utah Code § 76-10-503 & 501(6)(a) (2011) (emphasis added). These provisions seem clearly to extend to the possession of a knife by a person who *221 openly threatens his intended use of causing death or serious bodily injury. And in this case the evidence of such intent was clear and straightforward.
131 The jury heard testimony from the field supervisor on duty that Wade Miles said he had a knife or gun and -would "shoot and kill" the supervisor if he would not leave him alone. See supra 18. That was no idle threat, as Miles in fact did have a knife within reach. I would affirm the verdict on the basis of that evidence and in light of the controlling statutory definition, which encompasses all items with an "intended use" of "causing death or serious bodily injury." Utah Code $ 76-10-501(6)(a).
§ 32 The majority reaches a contrary conclusion. It does so based on the view that the statute prescribes two separate definitions of "dangerous weapon"-one (in subsection (a) of Utah Code section 501(6)) for objects commonly known as dangerous weapons, and another (in subsection (b) of that same provision) for objects not so known. Supra ¶¶14-18. And because a knife like the one in question here is not "commonly known" as a dangerous weapon, the court discards the first definition in favor of the second, concluding that the "language of subsection (b) indicates that each subpart of this section provides a separate and comprehensive definitional standard applicable to" knives and other objects not commonly known as dangerous weapons. Supra ¶ 14. Finally, the court finds no evidence to sustain a determination of Miles's knife as a "dangerous weapon" under subsection (b), and therefore reverses the conviction entered in this case for lack of sufficient evidence. Supra ¶ 28.
T 33 I respectfully dissent. I find no basis on the face of the statute for the majority's notion of two definitions of "dangerous weapon." Only subsection (a) of 501(6) speaks the language of definition. It does so in unmistakably definitional terms-starting with the statutory term in quotes and then expressly stating what it "means." Utah Code § 76-10-501(6)(a) (" Dangerous weapon' means an item that in the manner of its use or intended use is capable of causing death or serious bodily injury."). No other definitional language appears in the statute. So subsection (a) represents the sum and substance of the statutory notion of "dangerous weapon." And that definition says nothing of subclasses of weapons-of those commonly known or 'not commonly known as weapons. Instead it comprehensively defines "[dlangerous weapon" to mean each and every "item that in the manner of its use or intended use is capable of causing death or serious bodily injury." Id.
T 34 I dissent from the majority's approach because it overrides a clear component of this definition-eliminating any possibility of a knife (or other item not commonly known as a dangerous weapon from) qualifying as such (absent actual use) even if its expressly threatened "intended use" is to inflict "death or serious bodily injury." That conclusion cannot be reconciled with the statutory definition. We cannot eliminate a subclass of items whose openly threatened "intended use" is to inflict death or serious bodily injury without contravening the terms of the statute.
135 Subsection (b) of section 501(6) is subordinate to, not coextensive with, subsection (a). Because some objects used or intended to be used to inflict injury are not always understood as "dangerous weapons," subsection (b) prescribes certain "factors" to guide the factfinder's application of the subsection (a) definition. Yet factors are not definitional. They simply identify categories of evidence of relevance to the legal construct in question. Buack's Law Dictionary 671 (9th ed.2009) (defining "factor" as "an agent or cause that contributes to a particular result") (emphasis added). Definitions are a distinct concept. They establish "a general rule," or set a "boundary." Id. at 488 (defining "definiti0," latin root of definition). | ’
{36 Only subsection (a) fits the latter mold. Only that provision establishes the general rule or boundary that marks the legislative understanding of "dangerous weapon." -It does so by clearly stating what "'[dJlangerous weapon' means"-"an item" (without qualification, and without limitation to items "commonly known" as dangerous weapons) "that in the manner of its use or *222 intended use is capable of causing death or serious bodily injury." Urax Copm § 76-10-501(6)(a).
[ 37 Thus, subsection (b) is not definitional. It is a list of "factors" of relevance to the factfinder's application of the broader statutory definition in subsection (a). And it does not endorse the majority's notion of knives and similar weapons as escaping the element of mere "intended use."
38 The factors listed in subsection (b) do not support the majority's inference of a "separate and comprehensive definitional standard" for knives and other such objects. Supra 114. The majority so concludes on the basis of the overlap between subsection (a)s notion of "intended use" and the first and fourth factors prescribed in subsection (b). Supra 116. But the cited overlap in no way renders the enumerated factors "unnee-essary and duplicative" as extended to knives. Id. Overlap, in fact, is inherent in the nature of a statutory factor. The whole point of identifying "factors" of relevance to a statutory definition is to elaborate and expand upon the definitional terms. So the fact that consideration of an object's "character" overlaps with the definition's reference to an object's "use or intended use" is not a reason to view the factors as overtaking the definition. Supra 116 (so concluding). That only reinforces the apparent purpose of the factors-of elaborating on the definition by identifying categories of relevant evidence.
139 The same goes for the fact that the fourth factor (the object's "other lawful purposes") is "the converse" of an object's intended use for bodily harm. Id. This is not a "significant definitional redundancy" indicating that subsection (b) prescribes its own subsidiary definition. Id. It is simply an elaboration of the single definition set forth in the statute-and in that sense a classic application of the notion of a legal fuctor.
4 40 In reversing Miles's conviction under its construction of the statute, the majority effectively eviscerates the crime of mere possession of dangerous weapons such as knives. 'Under the court's opinion as I understand it, a convicted felon cannot be convicted of unlawfully possessing a knife (or, presumably, an ice pick, box cutter, or chain saw) that he openly wields for the threatened purpose of inflicting serious bodily harm. So long as such weapon is not actually used to inflict a bodily wound, the law as stated in the majority opinion would foreclose a charge or convietion of possession of a dangerous weapon.
T41 That conclusion follows from the court's determination of the insufficiency of the evidence to sustain Miles's conviction. The majority emphasizes that under its reading the "focus" of the statutory definition for knives is on "the manner in which the object is actually used." Supra ¶19. And it specifically holds that mere "intended use" of a knife or other object not commonly known as a dangerous weapon cannot "establish [its] nature as a dangerous weapon." Id.; see also supra ¶2 (explaining that for such objects "the statute permits consideration only of how the object was actually used"). Ultimately, from these premises, the court finds the evidence against Miles insufficient, as he never actually used the knife in question as a weapon but only threatened to do so, and the "character" of the knife in the court's view was insufficient to weigh in favor of its treatment as a "dangerous weapon." Supra ¶¶ 22-28.
1 42 I disagree with both the premises and application of the court's analysis. The court's premises confirm that it is eliminating the crime of possession of knives and other such weapons. If "intended use" cannot suffice to establish the dangerous nature of a knife or other such weapon, then there is no crime of mere possession for such objects.[1] *223 Perhaps there is a reasonable public policy basis for that decision.[2] But there is no room for it in our statutory scheme, and I dissent from, the court's decision on that ground.
1 43 I also disagree with the court's determination of the insufficiency of the evidence. First, I would treat the factors in subsection (b) for their stated purpose-as factors-and not as a separate definition or operative test. So I would judge the sufficiency of the evidence primarily under the definition in subsection (a), and only secondarily as informed by the factors in subsection (b). And under the statutory definition, I would find ample evidence to support the jury's determination that Miles's knife was "an item that in the manner of its ... intended use is capable of causing death or serious bodily injury." Utah Code § 76-10-501(6)(a). The principal relevant evidence was glaringly probative. It took the form of Miles's explicit threat to use his knife to kill or cause serious bodily injury. That is about as clear a case of "intended use" as you could ever find, which is why the court's decision to reverse amounts to a decision to eliminate the crime of possession for knives or similar objects.
144 The fact that a "threat" to use the object to cause harm is not listed in subsection (b) is no barrier to this conclusion. Nor is the mandatory "shall" nature of the statutory listing. Again, factors, by nature, are categories of evidence of relevance to fact-intensive determinations. An actual threat could easily be understood to be left off of the list on the ground that that is a clear-cut case of intended use to harm. And that is the ultimate statutory question; the factors are secondary (even if required to be considered). We cannot ignore straightforward, patent evidence of intended use just because the statute tells us to consider other factors that would be helpful in more difficult cases.
45 Second, I also disagree with the notion that the factors in subsection (b) go only to an item's actual use. Supra ¶19. Clearly the "character" of an instrument and the "other lawful purposes for which [it] may be used" are about potential use. Utah Code § 76-10-501(6)(b)(i) & (iv). So at least half of the listed factors aren't at all about actual use. Plus, even the "manner" of use factor could encompass use as a weapon without any actual infliction of a wound-sinee weapons are also used as such to make threats. See infra ¶ 47-48.
1 46 There is accordingly no basis for conceiving of the subsection (b) factors as limited to actual use to inflict injury. Understandably. Consider an ice pick. Such an item was once a common kitchen implement. But that character went away long ago-when the ice box became the refrigerator. So its character today is often as a weapon.[3] And it lacks few if any "other lawful purposes." So if an ice pick were brandished by a felon with an express threat to use it to kill or cause serious harm, surely it would qualify as a dangerous weapon (even without evidence of "actual use" to inflict injury).
147 Finally, I would find the evidence in this case to be sufficient even if I saw a basis for treating subsection (b) as a freestanding definition. In short, I agree with the court of appeals majority's analysis of the statutory factors: the character of the knife cuts at least arguably in favor of its assessment as a dangerous weapon in light of its thumb stud and serrated blade; the knife's capability of inflicting serious wounds is another factor weighing at least plausibly in the same di *224 rection; and Miles used the knife as a weapon by brazenly threatening to use it to "kill" the supervisor with it while the object was "within reach in the pocket of his jacket in a nearby shopping cart," thus "fram[ing] the knife as a weapon rather than a tool." Salt Lake City v. Miles, 2013 UT App 77, ¶ 19, 299 P.3d 1163.
148 The majority's responses are unpersuasive. It may well be that the thumb stud and serration do not give Miles's knife "the distinctive tone of a dangerous weapon," supra ¶23, but that only means that "character" is a factor that could cut either way. And on sufficiency of the evidence questions we defer to the jury, giving its verdict the benefit of any reasonable doubts. As to the second factor, I do not dispute that the statute speaks directly only to "wounds actually produced by the knife." Supra ¶25 (emphasis in original). But in the context of a crime of possession of an object intended to cause harm, it is reasonable to read "if any" to leave room for the jury to consider wounds potentially produced by the knife. And significantly, I cannot agree that the "use" referred to in the third factor refers exclusively to use to inflict a wound. Supra ¶26 (so concluding). Surely weapons are understood to do more than inflict wounds; they are also for deterrence-or for proactive threats of violence. So in my view Miles did actually use the knife as a weapon-to threaten the field supervisor with bodily harm. This is not a lawful, non-weapon use. He was hardly whittling by the campfire.
{49 For these reasons, only one of the four subsection (b) factors ("other lawful purposes for which [it] may be used") clearly and exclusively weighs against the jury's verdict. I would hold that that is insufficient, and would therefore affirm even under the majority's understanding of the definitional nature of subsection (b).

. The court's disclaimer only reinforces the problem. Certainly the decision preserves the crime of mere possession for "objects commonly known as dangerous weapons." Supra 118. But there is no separate crime of possession of objects commonly known as dangerous weapons. The statutory crime is possession of a dangerous weapon, and the operative definition unmistakably encompasses all objects with the intended purpose of inflicting serious injury. So the notion that we are preserving the crime 'of possession for some dangerous weapons is a concession that we are eliminating it for others. Thus, after today's decision, restricted persons in Utah may openly brandish and threaten the use of knives, ice picks, box cutters, and the like, without fear of prosecution for possession of a dangerous weapon. I dissent because I see no way to *223 reconcile that with a statute that plainly criminalizes the possession of all objects whose "intended use" is to inflict serious injury.

. I can appreciate, for example, the concern that restricted persons deserve notice of the objects that they are criminally prohibited from possessing; the view that it is difficult to define precisely the considerations relevant to "intended use" of knives and other objects with lawful uses; and the need to balance the interest of restricted persons to own and carry such items. But these are policy questions for the legislature. So long as our statute criminalizes the mere possession of objects whose "intended use" is to cause death or serious bodily injury, we must respect that decision.

. Wendy Ruderman, The Ice Pick Seems Antiquated, But It Still Shows Up Occasionally On the Police Blotter, N.Y. Times, Sept. 1, 2012, at A19 (explaining that the introduction of the refrigerator rendered the ice pick largely irrelevant; noting that the ice pick's principal remaining purpose is as a weapon).