2013 UT App 77

# THE UTAH COURT OF APPEALS

SALT LAKE CITY,

*Plaintiff and Appellee,*

*v.*

WADE JOHN MILES,

*Defendant and Appellant.*

Opinion
No. 20111124-CA
Filed March 28, 2013

Third District, Salt Lake Department
The Honorable Robert P. Faust
No. 111907362

Allyson Barker, Attorney for Appellant
Scott A. Fisher, Attorney for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE STEPHEN L. ROTH concurred.
JUDGE JAMES Z. DAVIS dissented, with opinion.

VOROS, Judge:

¶1      Wade John Miles appeals his conviction on one count of possession of a dangerous weapon by a restricted person, a class A misdemeanor. *See generally* Utah Code Ann. § 76-10-503(3) (LexisNexis 2012).[1] We affirm.

---

1. Throughout this opinion, we cite the current version of the Utah Code because no substantive changes have been made to the

(continued...)

BACKGROUND

¶2     Late one evening in October 2011, Miles attempted to board a light rail train at a downtown Salt Lake City stop. The train operator prevented Miles from boarding because Miles was trying to board with a shopping cart. Thinking that Miles was intoxicated, the train operator radioed for assistance from the field supervisor on patrol that night. The supervisor arrived and tried to get Miles to move to the sidewalk for safety reasons. After a short exchange, Miles started "using the word 'fuck' a lot, telling [the supervisor] to fuck off, fuck [you] for thinking [you are] so cool because [you] have a job and . . . can tell people what to do." The supervisor threatened to call the police. Miles then made a statement about a knife and a gun. In his witness statement, the supervisor wrote that Miles said that "if" he had a gun or a knife he would kill the supervisor. At trial, the supervisor testified that Miles said that "he had a knife and a gun" and would kill the supervisor if he did not get away from him.[2]

¶3     A police officer arrived and administered a field sobriety test, which Miles failed. The officer arrested Miles for threatening the supervisor and for intoxication, which the officer believed made Miles a danger to himself. The officer searched Miles's shopping cart incident to the arrest. He found a "jacket [and] in that jacket pocket was a folding knife." When the officer asked Miles about the knife, Miles "said he forgot that he had it." En route to the jail, Miles told the officer that "he had used it for camping."

---

1. (...continued)
relevant statutory provisions that would affect the resolution of the issues presented on appeal.

2. In reciting the evidence that Miles threatened Wagner, we note that Miles was acquitted of a charge of threats against life or property. However, these facts were also offered in support of the dangerous weapon charge.

¶4     The knife's blade is approximately 3½ inches long and the handle approximately 3½ to 4 inches long. It features a thumb stud to allow the user to swing the blade open with one hand. A portion of the blade, about 1½ inches, is serrated. According to the arresting officer, the potential wound profile would be more "exaggerated" with a serrated blade than with a straight blade. The officer testified that the type of wounds that a folding knife like this could potentially cause include "[f]lesh wounds" and "puncture wounds" that could seriously and permanently disfigure or even kill a person.

¶5     At trial, the court admitted the booking photo from the night of the arrest. The exhibit is an approximately 4½-inch square photograph depicting Miles from the chest up clad in a tie-dyed T-shirt, looking weathered, and with his hair standing on end. Miles objected to the booking photo on relevance grounds but the trial court stated, "Well, he's been identified [in court during the trial] but I think it's to show the status he was at the time of the event. So I will admit it for that."

¶6     Miles was charged with criminal trespass; threats against life or property; intoxication; and purchase, transfer, possession or use of a dangerous weapon by a restricted person. After a one-day jury trial, Miles was acquitted of the first three counts but convicted of possession of a dangerous weapon by a restricted person.


ISSUES AND STANDARDS OF REVIEW

¶7     Miles advances two contentions on appeal. First, he contends that the evidence was insufficient to support the jury's verdict of guilt on the dangerous weapon charge. Our review of a claim of insufficient evidence "is highly deferential to a jury verdict." *State v. Workman*, 2005 UT 66, ¶ 29, 122 P.3d 639. We view "the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94. We reverse only if

"reasonable minds could not have reached the verdict." *State v. Colwell*, 2000 UT 8, ¶ 42, 994 P.2d 177.

¶8      Second, Miles contends that the trial court abused its discretion by admitting the booking photo. "A trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion." *State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194.

## ANALYSIS

### I. Sufficiency of the Evidence

¶9      Miles contends that the evidence was insufficient to establish that the knife he possessed on the train platform was a dangerous weapon as defined by statute. *See* Utah Code Ann. § 76-10-501(6), -503(3) (LexisNexis 2012). The parties read the statute defining *dangerous weapon* differently, presenting a preliminary question of statutory interpretation.

¶10     "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *Sindt v. Retirement Bd.*, 2007 UT 16, ¶ 8, 157 P.3d 797 (citation and internal quotation marks omitted). "We read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592. "We must also give every word meaning and effect, and avoid any interpretation that renders parts or words in a statute inoperative or superfluous." *In re West Side Prop. Assocs.*, 2000 UT 85, ¶ 31, 13 P.3d 168 (citations omitted).

¶11     Our Legislature has defined *dangerous weapon* as "an item that in the manner of its use or intended use is capable of causing death or serious bodily injury." Utah Code Ann. § 76-10-501(6)(a). "Thus, because an item must simply be *capable* of causing death or serious bodily injury, an item not necessarily manufactured as a dangerous weapon may nonetheless become one." *State v. C.D.L.*,

2011 UT App 55, ¶ 16, 250 P.3d 69 (citing Utah Code Ann. § 76-1-601(5)(a) (2008)) (interpreting a similarly worded definition of *dangerous weapon* for purposes of defining aggravated assault). The statute enumerates four factors relevant to determining whether a knife is a dangerous weapon:

> The following factors shall be used in determining whether a knife, or another item, object, or thing not commonly known as a dangerous weapon is a dangerous weapon:
>> (i) the character of the instrument, object, or thing;
>> (ii) the character of the wound produced, if any;
>> (iii) the manner in which the instrument, object, or thing was used; and
>> (iv) the other lawful purposes for which the instrument, object, or thing may be used.

Utah Code Ann. § 76-10-501(6)(b). The trial court instructed the jury to consider all four of the statutory factors in determining whether the knife was indeed a dangerous weapon.[3]

---

3. In *State v. Archambeau*, 820 P.2d 920 (Utah Ct. App. 1991), we held that this statutory definition implied two distinct analytical categories: "(1) items commonly known as dangerous weapons; and (2) items not commonly known as dangerous weapons but included if, in considering the . . . enunciated characteristics [in what is now section 76-10-501(6)(b)], they qualify." *Id.* at 929 (emphases omitted); *see also State v. Pugmire*, 898 P.2d 271, 273 & n.5 (Utah Ct. App. 1995) (criticizing *Archambeau*'s statutory analysis but noting that the court was constrained to follow it under principles of horizontal stare decisis). *Archambeau* did not apply the statutory factors to determine whether a pair of knives qualified as dangerous weapons, concluding instead that the knives were commonly known as dangerous weapons. *See* 820 P.2d at 929; *see*

(continued...)

¶12    In effect, Miles contends that all four factors must be present for an item to be deemed a dangerous weapon, including actual use: "Although the jury may consider all four factors and give each the weight it believes it deserves, the inclusion of two factors regarding the actual use of the weapon demonstrates that the statute does not criminalize the mere carrying of a knife absent any actual use of that knife in a dangerous fashion." Under this reading of the statute, a person is guilty of possessing a dangerous weapon only if he in fact uses it, because otherwise the item is by definition not a dangerous weapon.

¶13    This interpretation of the statute is not harmonious with related statutory provisions. First, Miles's reading of subsection 76-10-501(6)(b) is inconsistent with subsection 76-10-501(6)(a). The latter defines a dangerous weapon as "an item that in the manner of its use *or intended use* is capable of causing death or serious bodily injury." Utah Code Ann. § 76-10-501(6)(a) (emphasis added). The words "or intended use" clearly signal that an item may qualify as a dangerous weapon even if it is not actually used as one.

¶14    Second, Miles's reading of subsection 76-10-501(6)(b) is inconsistent with section 76-10-503. Section 76-1-501 defines *dangerous weapon* as that term is used in section 76-10-503. Section 76-10-503 criminalizes the use or possession of a dangerous weapon:

> A Category II restricted person who purchases, transfers, *possesses*, uses, or has under the person's custody or control:

---

3. (...continued)
*also Pugmire*, 898 P.2d at 273–74 (same). However, *Archambeau* is not controlling here because the Legislature subsequently amended the statute to explicitly require application of the four statutory factors to determine whether a knife is a dangerous weapon. *See* Act of March 9, 1995, ch. 80, § 1, 1995 Utah Laws 325.

> (a) any firearm is guilty of a third degree felony; or
>
> (b) any dangerous weapon other than a firearm is guilty of a class A misdemeanor.

*Id.* § 76-10-503(3) (LexisNexis 2012) (emphasis added). Clearly, one may commit this offense by merely possessing a dangerous weapon. Miles's view that an item must actually be used as a weapon to qualify as a dangerous weapon would nullify this variant of the offense.

¶15    In sum, reading section 76-10-501(6)(b) in light of surrounding statutory provisions, we conclude that the statutory directive to consider "the manner in which the instrument, object, or thing was used" does not require that the thing actually be used in order to qualify as a dangerous weapon. *See id.* § 76-10-501(6)(b)(iii).

¶16    We now consider whether the evidence, in the light most favorable to the verdict, was sufficient for the jury to determine that the knife Miles possessed was a dangerous weapon under the factors enumerated in section 76-10-501(6)(b).

¶17    The first factor is "the character of the instrument, object, or thing." *Id.* § 76-10-501(6)(b)(i). The knife's blade is approximately 3½ inches long and its handle approximately 3½ to 4 inches long. The knife features a thumb stud to allow the user to swing the blade open with one hand. About half the blade is serrated.

¶18    The second factor is "the character of the wound produced, if any." *Id.* § 76-10-501(6)(b)(ii). Here, no wound was in fact produced. However, the officer testified that the knife could cause puncture and slashing wounds and that the wound profile for this knife would be "exaggerated" because of its serrated edge. He also testified that the knife was capable of inflicting permanent disfigurement or even death.

¶19     The third factor is "the manner in which the instrument, object, or thing was used." *Id.* § 76-10-501(6)(b)(iii). As stated above, Miles did not physically use the knife. However, it was within reach in the pocket of his jacket in a nearby shopping cart. And Miles told the supervisor either that he had a knife and would kill the supervisor if he did not move away, or that *if* he had a knife he would kill the supervisor. Thus, Miles himself framed the knife as a weapon rather than a tool.

¶20     The fourth factor is "the other lawful purposes for which the instrument, object, or thing may be used." *Id.* § 76-10-501(6)(b)(iv). Miles stated that he used the knife for camping. The knife is obviously well suited for camping and other innocent uses.

¶21     In sum, this knife had a blade that could be flipped open with one hand and was capable of inflicting serious, even deadly, wounds; it was within Miles's reach; and Miles referred to a knife in connection with stating he would or might kill the supervisor. Viewing this evidence "and all inferences which may reasonably be drawn from it in the light most favorable to the verdict," *see State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94, we cannot agree that "reasonable minds could not have reached" the conclusion that Miles's knife was a dangerous weapon, *see State v. Colwell*, 2000 UT 8, ¶ 42, 994 P.2d 177.

## II. Admission of the Booking Photo

¶22     Miles also contends that the trial court abused its discretion by admitting his booking photo. Miles argues that his appearance in the photo was not relevant to any element of the crimes charged and that his tie-dyed T-shirt, disheveled appearance, and unfriendly facial expression unduly prejudiced him. *See* Utah R. Evid. 401, 402.

¶23     The trial court is afforded "broad discretion to admit or exclude evidence and [this court] will disturb its ruling only for abuse of discretion, which may be demonstrated by showing that the [trial] court relied on an erroneous conclusion of law or that

there was no evidentiary basis for the trial court's ruling." *State v. Gallup*, 2011 UT App 422, ¶ 12, 267 P.3d 289 (second alteration in original) (citation and internal quotation marks omitted). Relevant evidence includes evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. Utah R. Evid. 401.

¶24 We conclude that the trial court did not abuse its discretion in admitting the photo. Miles's appearance shortly after his arrest was relevant to the charge of intoxication. "The judge could determine that the photograph was relevant and admissible on the issue of his intoxication notwithstanding and in addition to the admission of testimony concerning the defendant's appearance at the time." *Commonwealth v. Schirmer*, 76 Mass. App. Ct. 1137, para. 11 (2010) (mem.) (unpublished); *see also Aldridge v. State*, 515 S.E.2d 397, 402 (Ga. Ct. App. 1999) (holding that defendant's booking photo "was relevant as some evidence of his intoxication"); *People v. Best*, No. 228168, 2002 WL 1040578, at *2 (Mich. Ct. App. May 21, 2002) (per curiam) (unpublished) (holding that booking photo "was clearly relevant to the question of defendant's intoxication, as it showed his physical state a short time after the alleged offense").[4]

---

4. Miles argues that the City used the photograph to argue that his appearance "was somehow relevant to whether he possessed a dangerous weapon and that the jury should find that he possessed a dangerous weapon because of how he looked." Because Miles's assertion is not accompanied by a citation to the record, *see* Utah R. App. P. 24(a)(9), we do not know what statement he would draw to our attention. We note that in discussing the dangerous weapon charge in closing, the prosecutor did say that "this is the way he looked on that day." The prosecutor's point was that the dangerous weapon determination must be made by "looking at the context" and that weapons are "more dangerous in the hands of people who are intoxicated." In any event, on appeal Miles challenges the admission of the photograph, and does not allege prosecutorial misconduct in closing argument. We thus focus on the evidentiary ruling only.

¶25    In any event, Miles has not demonstrated prejudice. Trial court error warrants reversal "'only if a review of the record persuades the [appellate] court that without the error there was a reasonable likelihood of a more favorable result for the defendant.'" *State v. Knight*, 734 P.2d 913, 919 (Utah 1987) (emphasis omitted) (quoting *State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984)). A reasonable likelihood "'is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 920 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)); *see also* Utah R. Crim. P. 30(a); Utah R. Evid. 103(a).

¶26    Miles argues that, had his "appearance at the time not been known to the jury, it is likely that given the lack of evidence presented under the four statutory factors for finding a knife was a dangerous weapon, the jury would have reached a different verdict." As explained above, our reading of the four statutory factors differs from that of Miles. We thus do not agree that the evidence was so meager that without the booking photo there was a reasonable likelihood of an acquittal on the dangerous weapon charge. In addition, the fact that Miles was acquitted of all other charges—criminal trespass, threats against life or property, and intoxication—demonstrates that the booking photo did not rouse the jury "'to overmastering hostility.'" *State v. Shickles*, 760 P.2d 291, 296 (Utah 1988) (quoting E. Cleary, *McCormick on Evidence* § 190, at 565 (3d ed. 1984)), *abrogated on other grounds by State v. Doporto*, 935 P.2d 484 (Utah 1997).[5]

---

5. The dissent argues that the booking photo was admitted in violation of rule 403 of the Utah Rules of Evidence and that the error was prejudicial. *See infra* ¶ 34. Miles neither objected to the photo on rule 403 grounds at trial nor argued rule 403 on appeal. We thus do not and should not consider this "unargued legal theory." *See State v. Robison*, 2006 UT 65, ¶ 25, 147 P.3d 448 (cautioning against reversing on an unargued and unbriefed ground). As for rules 401 and 402, "assuming that the photograph was marginally relevant," as the dissent does, *see infra* ¶ 34, ends the inquiry.

CONCLUSION

¶27    Under a correct reading of the dangerous weapon statute, the evidence at trial was sufficient to support the jury's verdict of guilt for the crime of possession of a dangerous weapon by a restricted person. The trial court did not abuse its discretion by admitting the booking photo, but even if it had, any error was harmless. We therefore affirm.

———————

DAVIS, Judge (dissenting):

¶28    I respectfully dissent from the majority's determination that there was sufficient evidence to support Miles's conviction for possession of a dangerous weapon by a restricted person and that the trial court's admission of the booking photograph was harmless. Accordingly, I would reverse Miles's conviction.

¶29    As the majority observes, four factors are relevant in determining whether a knife or other instrument is a dangerous weapon: "the character of the instrument"; "the character of the wound produced, if any"; "the manner in which the instrument . . . was used"; and "the other lawful purposes for which the instrument . . . may be used." Utah Code Ann. § 76-10-501(6)(b) (LexisNexis 2012). Under the facts and circumstances of this case, I believe the evidence was insufficient to support a determination that Miles's pocket knife constituted a dangerous weapon.

¶30    The only evidence supporting the verdict is the fact that the knife was capable of inflicting serious and potentially deadly wounds, and Miles's alleged statement to the supervisor that "he had a knife and a gun" and would kill the supervisor if he did not back away. Although I agree with the majority that Miles's not having used the knife is not dispositive, I do believe it is relevant, particularly under the circumstances of this case where Miles not only did not use the knife but also did not even access or attempt to access it.

¶31 The knife in this case was a small pocket knife with myriad lawful uses. Although it may have been "capable of causing death or serious bodily injury" if used unlawfully, *see id.* § 76-10-501(6)(a), the evidence does not support a determination that Miles actually used or intended to use the knife in such a way. The knife was inside a jacket pocket in Miles's shopping cart. Despite possibly threatening the supervisor, Miles never actually brandished the knife at him and never attempted to reach for it or take it out of the jacket. Furthermore, the supervisor's testimony was inconsistent with his written report, prepared when events were presumably fresher in his mind, which stated that Miles told him that he would kill him *if* he had a knife and a gun.[6] In fact, when the arresting officer found the knife, Miles told him he had forgotten he even had it, a statement consistent with the supervisor's written report. Finally, the jury acquitted Miles of the threat charge despite apparently employing the threat evidence to convict him of the dangerous weapon charge.[7]

¶32 The majority places altogether too much emphasis on the nature of the knife and what injury it *might* have caused. The majority's analysis of the second statutory factor—"the character of the wound produced, if any," *id.* § 76-10-501(6)(b)(ii)—is particularly troubling. If anything, this factor should weigh against classifying Miles's knife as a dangerous weapon because no wound was produced by the knife. However, rather than considering actual wounds produced, the majority evaluates the types of wounds the knife was capable of producing. Analyzing the second

---

6. Nevertheless, taking the facts in the light most favorable to the jury's verdict, *see State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94, I must assume Miles told the supervisor that he actually had a knife.

7. I acknowledge that Miles's acquittal alone does not undermine the validity of his conviction, *see generally United States v. Powell*, 469 U.S. 57, 64–66 (1984) (explaining that inconsistent verdicts on multiple charges do not justify reversal), but it does underscore the weakness of the threat evidence.

factor this way and considering it in conjunction with the first factor, which focuses on "the character of the instrument," *id.* § 76-10-501(6)(b)(i), essentially allows the jury to find two factors in support of classifying a knife as a dangerous weapon based solely on the fact that the instrument in question is a knife. This is inconsistent with the statute, which clearly allows for restricted persons to possess knives for lawful purposes and has even been amended to ensure that such possession is not unduly restricted. *See supra* ¶ 11 n.3. *Compare State v. Pugmire*, 898 P.2d 271, 273–74 & n.5 (Utah Ct. App. 1995), *and State v. Archambeau*, 820 P.2d 920, 929 (Utah Ct. App. 1991), *with* Act of March 9, 1995, ch. 80, § 1, 1995 Utah Laws 325 (adding "knife" to the list of items "not commonly known as a dangerous weapon" and directing consideration of "the other lawful purposes for which the instrument, object, or thing may be used" in the determination of whether such an instrument might constitute a dangerous weapon). To approach the dangerous weapon analysis as the majority has in this case is to essentially preclude any restricted person from carrying anything sharper than a butter knife. I do not disagree that the evidence regarding the types of wounds the knife is capable of inflicting may be relevant, but I would consider such evidence to fall within the ambit of the first factor, not the second. The second factor should be limited to considering only the wounds actually produced, "if any." *See* Utah Code Ann. § 76-10-501(6)(b)(ii).

¶33    In light of the fact that Miles neither used nor attempted to use the knife, that no wound was caused by the knife, and that the knife was "well suited for camping and other innocent uses," *see supra* ¶ 20, I do not find the evidence that the knife was sharp, serrated, and capable of causing injury, combined with Miles's empty threats to the supervisor, to sufficiently support a determination that the knife was a dangerous weapon. Thus, I would reverse Miles's conviction.

¶34    I also do not think the booking photograph should have been admitted. Miles's argument focuses primarily on the relevance of the photograph under rules 401 and 402 of the Utah Rules of Evidence, rather than weighing its probative value against its prejudicial effect under rule 403. *See* Utah R. Evid. 401, 402, 403.

However, even assuming that the photograph was marginally relevant to the charges of which he was acquitted, as the City asserts, I believe that under the circumstances of this case, that relevance was outweighed by the photograph's potential prejudice. Given the extremely limited evidence relating to the dangerous weapon charge—evidence which I consider to be insufficient to support the verdict—I am persuaded that there was a "reasonable likelihood of a more favorable result" for Miles had the booking photograph been excluded.[8] *See State v. Knight*, 734 P.2d 913, 919 (Utah 1987) (citation and internal quotation marks omitted).

--------

8. The majority asserts that the jury's acquittal of Miles on the other charges suggests that the photograph did not rouse them to overmastering hostility. *See supra* ¶ 26. However, I believe such hostility could be evidenced by the jury's decision to convict him of one of the charges despite the evidence being insufficient to convince it that he was actually guilty of any of the charges.